UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| JOSHUA LEE LEESE,<br><br>Plaintiff,<br><br>vs.<br><br>SHERIFF MICHAEL BLUM, Sheriff of Todd/Tripp/Mellette Counties, in his individual and official capacity; DEPUTY TREVOR WILLCUTS, Sheriff Deputy of Todd/Tripp/Mellette Counties, in his individual and official capacity; PROSECUTOR ALVIN PAHLKE, Prosecutor at Todd/Tripp County Courts, in his individual and official capacity; JUDGE BOBBI RANK, Judge of Todd/Tripp Counties, in her individual and official capacity; CITY OF WINNER/ WINNER CITY JAIL, Winner City in Todd/Tripp County, in their individual and official capacities; MUNICIPALITIES OF WINNER/TODD/TRIPP COUNTIES, Todd/Tripp County at State of South Dakota and respective Counties, in their individual and official capacities; JOHN DOES, unknown parties employed at unknown agencies, in their individual and official capacities; and SGT. OLD LODGE, Rosebud Reservation Law Enforcement, in his individual and official capacities,<br><br>Defendants. | 3:25-CV-03029-RAL<br><br>OPINION AND ORDER SCREENING COMPLAINT UNDER § 1915A |

Plaintiff Joshua Lee Leese filed a pro se civil rights lawsuit under 42 U.S.C. § 1983 while incarcerated at Kinross Correctional Facility in Kincheloe, Michigan.[1] See Doc. 1 at 1, 35. The

[1] Leese filed a notice of change of address informing the Court that he is now located at the Cotton Correctional Facility in Jackson, Michigan. Doc. 12.

Court granted Leese's motion for leave to proceed in forma pauperis and ordered him to pay an initial partial filing fee, which Leese timely paid. Docs. 5, 9. The Court now screens Leese's complaint pursuant to 28 U.S.C. § 1915A.

## I. 1915A Screening

### A. Factual Background as Alleged by Leese[2]

On July 12, 2022, Leese was staying at the Quality Inn Hotel, located within the Rosebud Reservation. Doc. 1-1 at 24, ¶ 1. Leese alleges that he was seeking "sanctuary on tribal lands from malicious prosecution" by the Michigan Department of Corrections (MDOC).[3] Id. at 28, ¶ 39; see also id. at 4. While Leese was in the shower, he heard someone pounding on the door. Id. at 24, ¶ 2. Leese went to the door, where he saw Sheriff Michael Blum "outside the door by himself with gun drawn upon the door." Id.; Doc. 1 at 1–2. When Leese opened the door, Blum informed him that he was being arrested "under [Blum's] authority as a South Dakota Sheriff of Todd County." Doc. 1-1 at 24, ¶¶ 3–4. Leese informed Blum that he was a tribal member,[4] which Leese alleges Blum "ignored demanding [Leese] get onto the ground at gun point[.]" Id. ¶ 5.

---

[2] Leese includes two statements of facts, one typed and one handwritten, which outline substantially similar factual allegations. Doc. 1-1 at 24–31, 32–50. While this Court cites to both the handwritten and typed statements of facts, it refers mostly to the typed statement of facts for the sake of consistency and because it is more legible.

[3] Neither the MDOC nor any of its employees are named as defendants, Doc. 1 at 1–4, but Leese includes factual allegations regarding the conduct of the MDOC. See Doc. 1-1 at 28–30. The Court includes the factual allegations in Leese's complaint that are relevant to the claims he brings against the individuals and entities named as defendants. But the Court foregoes a discussion of the facts concerning allegations only against the MDOC, which is not named as a defendant. See Doc. 1 at 1–4. Additionally, Leese states that he intends to bring claims regarding the MDOC in a separate lawsuit. See, e.g., Doc. 1-1 at 8 (stating that "[t]hese matters with MDOC are being filed soon in a Michigan 1983 lawsuit.").

[4] South Dakota is not a Public Law 280 state, and tribes retain sovereign status including law enforcement responsibility within tribal boundaries on tribal members, with the state typically limited to law enforcement and policing of non-tribal members.

Leese did not resist Blum's orders and complied with his instructions while "knowing [he] was being illegally arrested clearly with malicious intent." Id. ¶¶ 5–6.

Blum ordered Leese to "lay down inside of the hotel room, which [Leese] complied to orders by gun wielding [Blum]." Id. ¶ 7. Leese again informed Blum that he was a tribal member, and that Leese was "violating Sovereign Tribal law as well as [Leese's] rights." Id. Blum placed Leese in handcuffs, "pulled [Leese] roughly to [his] feet," and brought Leese to the hotel parking lot where Deputy Willcuts and Sergeant Old Lodge were located. Id. ¶ 9; Doc. 1 at 1–2. Deputy Willcuts is a Sheriff's Deputy for Todd, Tripp, and Mellette Counties, and Sergeant Old Lodge is employed by Rosebud Sioux Tribe Law Enforcement. Doc. 1 at 2, 4. Leese alleges that these defendants used excessive force by "pushing [him] around" and "forcing" him into Willcuts' vehicle. Doc. 1-1 at 24, ¶ 11. Leese alleges that Willcuts and Old Lodge "both could have stopped [Blum] yet refused to even lift a finger in help, which is dereliction of duty & violation of rights as well as conduct unbecoming of employees with some form of education into legalities and jurisdiction." Id. ¶ 14.

Additionally, Leese alleges that Blum's "claims of presumptively positive field tests show that [Blum] assumed possessions inside a hotel room [Leese] was staying in as a[n] authorized user but not the rentor [sic], were [Leese's] & assumed that said items were used for illegal actions yet zero provable substances with complete positive tests were claimed clearly showing that presumptively means assumptions." Id. at 25, ¶ 33. See also id. at 56, ¶¶ 15–16 (providing that when Leese was arrested on July 12, 2022, Leese had two electronic scales in his hotel room that tested positive for methamphetamine by presumptive test, which was later confirmed by the South Dakota State Health Lab). Leese alleges that Blum "issued a criminal complaint upon [Leese] falsely and maliciously for things [Blum] claimed to come out of a hotel room rented by someone

that was NOT [Leese] as well as being Rosebud Tribal lands NOT South Dakota jurisdiction, seeking to institute paperwork and prosecution knowing what [Blum and Willcuts] knew to be illegally done." Doc. 1-1 at 26, ¶ 29.

Leese alleges that Blum and Willcuts "had no legal cause, zero fresh pursuit to justify unlawful use of force to illegally arrest a Sioux tribal member on Sioux tribal lands, nor the authority to arrest on tribal lands nor invade tribal lands nor authorization from Tribal courts or Tribal Government." Id. at 27, ¶ 34. Leese alleges that he informed Blum, Willcuts, and Old Lodge that he was a tribal member, which "was ignored by all parties involved at the point in time, going so far as to calling [Leese] a non-Native American." Id. at 24, ¶ 10. According to Leese, Blum "informed all Defendants that [Leese] was NOT a Native American, never bothering to call Tribal offices which would have shown family ties[.]" Id. ¶ 13. Leese alleges that neither Blum, Willcuts, nor Old Lodge "took any consideration that [Leese] could very well be Sioux Tribal member, nor did they follow any protocol, in fact disregarding clear & defined law in both State and Federal court & statu[t]e." Id. ¶ 15.

After Leese was placed in Willcuts' vehicle, Willcuts drove Leese "out of Rosebud lands illegally & knowing that Defendants in fact violated Sovereign Tribal rights as all that Defendants needed to do was contact tribal offices and ask if Plaintiff could be a Tribal member." Id. ¶ 16. Leese further alleges that Willcuts drove him "off Rosebud Tribal lands at extreme rates of speed putting [Leese] in further fear for his well being and safety exceeding rates of speed of 80 mph or better[.]" Id. at 25, ¶ 18.

Leese alleges that he was "illegally held" in the Winner City Jail for over three months by Blum; Willcuts; Alvin Pahlke, a Todd County prosecutor;[5] Judge Bobbi Rank, a circuit court judge for the Sixth Judicial Circuit; the City of Winner/Winner City Jail ("Winner Defendants"); the municipalities of Winner, Todd, and Tripp Counties ("Municipal Defendants"); and "John Doe's [sic] of unknown parties involved employed at unknown agencies at unknown institutions" ("John Doe Defendants"). Id. ¶ 20; Doc. 1 at 2–4. Leese alleges that he was held "under false arrest, false imprisonment, as well as malicious intent by numerous other actions." Doc. 1-1 at 25, ¶ 20.

Further, Leese alleges that, at the court proceedings he attended,[6] Pahlke, Rank, and the John Doe Defendants "ignore[d his] claims of being a Sioux tribal member refusing to give [him] a[n] attorney for numerous court dates violating more" of Leese's rights. Id. ¶ 21. Leese also alleges that these defendants directed racially discriminatory comments toward him "repeatedly on the record demeanig [sic] [Leese] causing untold emotional and mental distress." Id. Leese alleges that he "attended numerous court dates" with Pahlke, Rank, the Winner Defendants, Municipal Defendants, and John Doe Defendants present, and that he did not have a lawyer until Judge Rank appointed Sandy Steffen[7] to represent him. Id. ¶ 23; see also Doc. 1-1 at 37 (alleging

---

[5] Leese alleges that Alvin Pahlke is "employed as prosecutor at Todd County/Tripp County courts[.]" Doc. 1 at 3. Pahlke is the State's Attorney for Todd County, South Dakota. See SD State's Attorneys, SD State's Attorneys Ass'n, https://sdstatesattorneys.org/sd-states-attorneys/ (last visited Nov. 2, 2026).

[6] Leese also alleges that "[a]ll South Dakota criminal allegations never were brought to any actual court proceedings which a 'prosecutor style team' worked together to just get [Leese] to MDOC, violating [his] rights in a plethora of legal proceedings, showing the criminal allegations in 3 county courts were in fact false and done to ensure issues." Doc. 1-1 at 30, ¶ 57.

[7] Steffen is not named as a defendant. See Doc. 1 at 1–4. Leese alleges that he was appointed other attorneys as well, including Theresa Maule Rossow in Aurora County, and an "unknown attorney for Minnihaha [sic] county." Doc. 1-1 at 30, ¶ 59. These individuals are not named as defendants. Doc. 1 at 1–4.

that he attended three court dates without a lawyer). According to Leese, Steffen "sought to convince [him] that the illegal arrest on Rosebud lands was in fact legal," and additionally "sought to compell [Leese] to show a 'indian social life' whatever that means or implies, among many other discriminatory demands and threats and words that [Leese] did not understand which is on the record." Doc. 1-1 at 25, ¶ 23 (spelling and grammar errors in original). Ultimately, Leese alleges that the "South Dakota allegations . . . all were dismissed in positive results for [him]." Id. at 30, ¶ 59.

Leese also alleges that he was in "a serious auto accident" on July 24, 2022,[8] that "caused medical issues that Winner City Jail conducted on site, which caused other issues[.]" Id. at 25, ¶ 22. Leese alleges that the Winner Defendants, Municipal Defendants, and John Doe Defendants "all had involvement in the scars and other issues that should have been handled by medical professionals that were of [Leese's] own choice." Id. Leese alleges that he now has "scars of disfigurement." Doc. 1-1 at 37. At a different point in his complaint, Leese alleges that "Winner City Jail actually performed a surgery on [him] while [he] was held there illegally[,]" although Leese does not specify what this surgery was for or if he is alleging claims based on this surgery. Doc. 1-1 at 16.

In August of 2022, Fort Peck Tribal Officer Twila Red Eagle sent an affidavit to the defendants, as well as to the attorney that was appointed to represent Leese, Sandy Steffen. Id. at 26, ¶ 25. Leese alleges that this affidavit "proved what [Leese] informed all Defendants of being born to Tribal Member Elizabeth Ann Jaruzel[.]" Id. However, Leese alleges that the defendants "still all refused to acknowledge [his] tribal status and protections from the 'bad men' spoken about

[8] At certain points in his complaint, Leese claims this accident occurred in 2021. See Doc. 1-1 at 16, 37. Leese's allegation that this accident "caused medical issues that Winner City Jail conducted on site," implies the accident occurred in 2022. See id. at 25, ¶ 22.

in treaty's [sic] signed with Sioux Tribes." Id. ¶ 26. Further, Leese alleges that "[a]ll Defendants refused to acknowledge their illegal actions and the fact all Defendants in fact worked together to cover up the egregious violation of [Leese's] rights protected not only by the constitution but also the Fort Laramie Treaty of Sioux tribes self governance[.]" Id. Leese alleges that "[d]efendants all maliciously prosecuted [him] which is illegal in & of itself, as well as illegally arresting [him], holding [him] illegally, causing many issues and financial difficulties as well as emotional & mental duress" for Leese. Id. ¶ 27. Leese alleges that South Dakota courts did not acknowledge these "false charges" on the record, and that Blum, Pahlke, and the John Doe Defendants "[f]orced issues which were made clear by MDOC proceedings who edited documents inside MDOC legal proceedings to appear to a picture MDOC sought to paint which is further made evident by documents [Leese] later got from MDOC & other agencies." Id. ¶ 30.

Leese was released around October 7, 2022, "under the guise of 'bond' with a MDOC hold in place when [Judge Rank] refused to issue a judgement for the farce of the habeas corpus proceedings[.]" Id. ¶ 31. Leese alleges that "[d]efendants clearly knew they violated [his] rights" due to this release. Id. at 28, ¶ 47. Leese makes other allegations regarding his bond, including that "[d]efendants had [him] pay a $1,000.00 bond for Todd county and $5,000.00 for Minnihaha county both paid by Defendant to Winner City Jail Staff, which Defendants never sent the $5,000.00 to Minnihaha county which is documented by the warrant Minnihaha had active on systems until [Leese] was arrested by SD HWY PD, in Aurora county." Id. at 30, ¶ 58 (spelling and grammar errors in original). Leese alleges that "[i]t is clear . . . that Defendants failed to pay Minnihaha [sic] county to leave a[n] active warrant when Defendants released [him] in October 2022, so that [Leese] would have issues if [he] came off Tribal lands after Defendants sought to trick [him] to come to court of [his] own free will, essentially hoping [he] was stupid enough to

come to court to be rearrested." Id. Leese alleges that this "is evidence South Dakota was used by Defendants to harass [him] in a plethora of ways." Id. Leese "signed extradition for Aurora courts which Defendants used to cover up illegal arrest and malicious prosecution by Defendants once Defendants grasped [Leese] is in fact a tribal member by birth." Id. at 30, ¶ 60 (capitalization in original omitted).

Additionally, Leese offers generalized statements about the defendants' conduct, including that "[a]t all times relevant to this complant [sic], the conduct of Defendants was in willful, reckless, and callous disregard for [Leese's] rights under Federal and State and Tribal law." Id. at 27, ¶ 36. Leese alleges that "[a]s a direct result & proximate result of the conduct of all defendants, [Leese] suffered & continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permenant [sic] as well as many financial difficulties." Id. ¶ 37. Leese also alleges that "[d]efendants sought to use Aurora County Circuit Courts documents of extradition as a means for dismissal of 'bench warrant' Defendants issued after Defendants plan of convincing [Leese] to willingly come off Tribal lands." Id. at 28, ¶ 44. Leese alleges that "[a]t no time did [he] violate tribal law or jurisdiction[.]" Id. ¶ 49. Additionally, Leese claims that "[d]efendants in this complaint sought to cover up illegal actions done in MALICIOUS intend [sic] by using other aspects of other legal proceedings to weaponize South Dakota Law Enforcement upon [him] which is evident on how the legal matters just disappeared due to MDOC email and other concerning issues." Id. at 30, ¶ 56.

Leese sues all defendants in their individual and official capacities. Doc. 1 at 2–4. Leese alleges that Michael Blum, the Sheriff of Todd, Tripp, and Mellette Counties, violated his rights "actting [sic] as a Police Officer on Tribal Lands where Defendant has zero authority, by maliciously arresting [Leese] illegally violating not only constitutional rights but also sovereign

rights[.]" Id. at 2 (capitalization in original omitted). Leese alleges that Trevor Willcuts, the Deputy of Todd, Tripp, and Mellette Counties, violated his rights by "acting as Deputy on Tribal lands maliciously arresting [Leese] refusing to stop his fellow officer of violating [Leese's] rights illegally arresting [Leese] and violating [Leese's] constitutional rights and sovereign rights[.]" Id. at 2–3. Alvin Pahlke, a prosecutor for Todd County, allegedly violated Leese's rights by "refus[ing] to acknowledge [Leese] was illegally arrested going further to use racially discriminatory language on the record in Court Proceedings[.]" Id. at 3. Leese alleges that Judge Bobbi Rank, a circuit court judge for the Sixth Judicial Circuit of South Dakota, violated his rights by "allowing proceedings to proceed without legal representation while other Defendants sought to convince [Leese] of the legality of the arrest on Tribal Lands." Id.; see also Doc. 1-1 at 55–57. Leese also alleges that Judge Rank "allowed racially discriminatory comments to be said to [him] and allowed Bond Money to be held by Defendants when it was to be paid to another county which is documented in multiple proceedings and systems and documents." Doc. 1 at 3. Additionally, Leese contends that Judge Rank "had the power to order investigation into reasoning for [his] journey to seek sanctuary on Tribal lands in the first place as a[n] administrative remedy, yet further allowed more rights violations." Id.

Next, Leese alleges that the Winner Defendants violated his rights when he "informed every single party of being held illegally arrested illegally and maliciously prosecuted." Id. Leese alleges that the Municipal Defendants violated his rights "when they held [him] illegally and had cause to know [he] was/is in fact a tribal member which [he] proved." Id. Leese contends that the Municipal Defendants "could have helped [Leese] prove said concerns yet allowed [his] rights to be violated." Id. Leese alleges that the John Doe Defendants violated his rights "by unknown means as well as unknown applications[.]" Id. at 4. Lastly, Leese alleges that Sergeant Old Lodge,

who is employed by the Rosebud Reservation Law Enforcement, violated his rights by "allow[ing] other Defendants to maliciously prosecute [Leese] who is Native American by BIRTH as well as allow[ing] other Defendants to act on Tribal lands which could be designed as means to erode tribal sovereignty[.]" Id.

As relief, Leese requests an unspecified amount of compensatory and punitive damages, as well as reasonable attorney fees and costs. Id. at 13. Leese also requests that the Court "appoint board for education of tribal members as to what is illegal and legal for the lands protected under treaty." Id. Liberally construing his complaint, Leese also requests "orders to stop all harassment and illegal actions done towards [him] now and in the past and future[.]" Doc. 1-1 at 16.

**B. Legal Standard**

A court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663

(8th Cir. 1985). Twombly requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at 555 (citations omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, a court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This Court will now assess Leese's claims under 28 U.S.C. § 1915A.

### C. Legal Analysis

Leese brings a total of ten counts in his complaint and alleges violations of various constitutional and treaty rights. Doc. 1 at 5–12. His claims are duplicative and at times it is difficult to understand what claims Leese is asserting against each defendant. See generally id. Liberally construing his complaint, Leese appears to bring the following claims. First, Leese alleges a Fourth Amendment excessive force claim related to his July 12, 2022 arrest, when Blum pointed a gun at him, ordered him to lay on the floor, and later pushed him into a law enforcement vehicle. See, e.g., Doc. 1 at 5–6, 20, 29; Doc. 1-1 at 24. Leese also alleges a Fourth Amendment unlawful arrest claim arising from this same July 2022 arrest. See, e.g., Doc. 1 at 5–7, 10.

Construing his complaint liberally, Leese also brings a Fourteenth Amendment substantive due process claim arising out of his July 12, 2022 arrest, when the actions of Blum, Willcuts, and Old Lodge placed "others on tribal lands in jeopardy[]" and involved a "[t]hreat to safety." See Doc. 1 at 6; see also Doc. 1-1 at 24, ¶ 18 (alleging that Willcuts drove him "off Rosebud Tribal

lands at extreme rates of speed putting [Leese] in further fear for his well being and safety exceeding rates of speed of 80 mph or better[.]"). Additionally, Leese brings a Fourteenth Amendment equal protection claim, alleging that he was discriminated against based on his race. Doc. 1 at 7, 8, 11.

Liberally construing his complaint, Leese also brings a claim for deliberate indifference to serious medical needs[9] based on the "medical issues" he experienced while at the Winner City Jail and related to the July of 2022 car accident he was involved in. See Doc. 1-1 at 25, ¶ 22. Leese also brings a claim for "illegal incarceration[.]" Doc. 1 at 7–8, 10. This Court also liberally construes Leese's complaint as bringing a civil conspiracy claim. See id. at 22 (alleging that "At All times relevant to this complaint All defendants operated in concert & conspiracy").

Leese also brings malicious prosecution claims under both state and federal law. See id. at 9. Additionally, Leese brings state law claims for assault, battery, false arrest, and false

---

[9] Whether Leese's deliberate indifference to serious medical needs claim falls under the Eighth or Fourteenth Amendment depends on whether he was a pretrial detainee or a convicted inmate at the time the conduct alleged in his complaint occurred. See Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (recognizing that a pretrial detainee's deliberate indifference claim would be analyzed under the Fourteenth Amendment's due process protections, rather than the Eighth Amendment). Here, it appears that Leese was a pretrial detainee at the time the events giving rise to the current complaint occurred. See generally Doc. 1. But because the Eighth Circuit has not established a different standard for this analysis, deliberate indifference claims under the Fourteenth Amendment may be examined under the same deliberate indifference standard as Eighth Amendment claims by convicted inmates. Davis, 992 F.2d at 152–53.

imprisonment. Id. Lastly, Leese brings claims under the Bad Men Clause of the Fort Laramie Treaty.[10] Id. at 7, 8, 10.[11]

**1. § 1983 Claims**

**a. Claims for Injunctive Relief**

Leese requests that the Court "appoint board for education of tribal members as to what is illegal and legal for the lands protected under treaty." Doc. 1 at 13. Liberally construing his complaint, Leese also requests "orders to stop all harassment and illegal actions done towards [him] now and in the past and future[.]" Doc. 1-1 at 16. Neither of these requests, however, are requests that this Court can grant. See, e.g., Bordeaux v. Carson, No. 4:25-CV-04047-RAL, 2026 WL 987522, at *7 (D.S.D. Apr. 13, 2026) (providing that a plaintiff's "broad request that [her] rights not be violated in the future is not something that this Court has control over, and not the sort of relief that this Court can grant."). Therefore, Leese's requests for injunctive relief are

---

[10] Leese refers generally to a "Bad Men doctorine [sic]" or "'bad men' clause[,]" Doc. 1 at 7, and at one point he refers to the "Bad Men doctorine [sic] of Tribal treaty of Fort Peck[.]" Id. at 8. It appears that Leese is referring to the Bad Men Clauses contained in the Fort Laramie Treaty of 1868. See Oglala Sioux Tribe v. United States, 674 F. Supp. 3d 635, 663 (D.S.D. 2023) (discussing the Bad Men Clauses contained in the Fort Laramie Treaty of 1868); see also Doc. 1-1 at 26, ¶ 26 (referencing both the Bad Men Clause and the Fort Laramie Treaty).

[11] Leese checks the boxes for both disciplinary proceedings and retaliation in the duplicate, handwritten complaint Leese filed on the Civil Rights Complaint by a Prisoner form. See Doc. 1 at 20–29; see also id. at 5, 7, 8, 9, 11 (alleging that Counts 1, 5, 7, and 9 relate to "disciplinary proceedings" and that Counts 5, 6, 7, and 9 involve "retaliation"). But Leese does not identify what these disciplinary proceedings were or how they relate to his claims, nor does he explain how he was retaliated against. See generally Doc. 1. Leese must provide supporting factual allegations, and merely checking a box is not enough to state a claim. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do[,]" and a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation modified).

dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**b. Claims Barred by Statute of Limitations**

Some of Leese's § 1983 claims pertain to the period of time between his arrest on July 12, 2022, and his release from custody on or around October 7, 2022, including his Fourth Amendment excessive force and unlawful arrest claims, Fourteenth Amendment substantive due process and equal protection claims, deliberate indifference to serious medical needs claim, and illegal incarceration claims. See generally Doc. 1. To the extent that these claims relate to events occurring before November 19, 2022,[12] however, these claims are barred by the applicable statute of limitations.

A court may dismiss a complaint as frivolous under 28 U.S.C. § 1915 when it is apparent that the statute of limitations has run. Myers v. Vogal, 960 F.2d 750, 751 (8th Cir. 1992) (per curiam). Because 42 U.S.C. § 1983 does not contain a specific statute of limitations, the Supreme Court of the United States has instructed courts to apply the analogous state statute of limitations. Bell v. Fowler, 99 F.3d 262, 265–66 (8th Cir. 1996) (citing Wilson v. Garcia, 471 U.S. 261, 266–68 (1985)). Under South Dakota law, "[f]ederal civil rights actions must be brought within three

[12] Leese signed his complaint as being executed on November 19, 2025, and states that his complaint "is deemed filed via prisoner mailbox rule on 11-19-25[.]" Doc. 1 at 1. The prisoner mailbox rule provides that a document filed by a pro se prisoner is "filed" at the time the prisoner delivers the document to the prison authorities for forwarding to the Court. Houston v. Lack, 487 U.S. 266, 276 (1988). The Eighth Circuit has interpreted the prison mailbox rule as requiring that a prisoner submit a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement setting out the date of deposit in the prison's internal mail system. LeGrand v. Carpenter, No. 4:22-CV-04168-CCT, 2025 WL 276294, at *2 (D.S.D. Jan. 23, 2025). Here, Leese does not provide a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement setting out the date of deposit in the prison's internal mail system. See Doc. 1. But even if Leese had submitted such a declaration or statement, his claims would still be barred by the statute of limitations, as this Court discusses below.

years after the alleged constitutional deprivation occurred." Sisney v. Best Inc., 754 N.W.2d 804, 809 (S.D. 2008) (citing SDCL § 15-2-15.2). Giving Leese the benefit of the prisoner mailbox rule for purposes of screening, his complaint was filed on November 19, 2025,[13] Doc. 1, meaning he only can make § 1983 claims for events that occurred on or after November 19, 2022. But Leese's claims, described above, center on his July 2022 arrest, see generally Doc. 1; Doc. 1-1 at 24–25, and his incarceration, which he alleges ended "around the 7th of October" in 2022, Doc. 1-1 at 26, ¶ 31. Some of Leese's claims fall squarely outside the applicable statute of limitations, including the claims against Sheriff Blum, Deputy Willcuts, and Sergeant Old Lodge[14] that arose out of Leese's July 12, 2022 arrest. Therefore, Leese's claims against Blum, Willcuts, and Old Lodge relating to the July 12, 2022 arrest are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[15] To the extent that Leese's Fourth Amendment excessive force and unlawful arrest claims, Fourteenth Amendment substantive due process and equal protection claims, deliberate indifference claims, and illegal incarceration claims concern events that occurred three years before the November 19, 2025 filing, these claims are time barred under

[13] Leese alleges that the statute of limitations for his malicious prosecution claim began to run on December 9, 2022. Doc. 1 at 1. This Court will evaluate Leese's malicious prosecution claims separately.

[14] Sergeant Old Lodge potentially has a defense of tribal sovereign immunity to being named in his official capacity, as claims against tribal officials in their official capacities are treated as claims against the tribe. See Stanko v. Oglala Sioux Tribe, 916 F.3d 694, 697 (8th Cir. 2019) (providing that claims against individual tribal officers acting in their official capacities were barred by tribal sovereign immunity because "[a] suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent." (quotation omitted)).

[15] As the Court understands Leese's complaint, all of his claims against these defendants relate to his July 12, 2022 arrest, see Doc. 1 at 2–12, and are therefore barred by the statute of limitations, though this Court discusses Leese's malicious prosecution claim against these defendants below.

the statute of limitations and dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**c. Claims Against Pahlke, Rank, Winner Defendants, Municipal Defendants, and John Doe Defendants**

While some of Leese's claims are clearly barred by the statute of limitations, such as his claims against Blum, Willcuts, and Old Lodge relating to his July 2022 arrest, other claims are related to his incarceration and legal proceedings subsequent to his arrest, and it is less clear when these alleged violations of Leese's rights occurred. See generally Doc. 1, Doc. 1-1. Among these claims that may be within the § 1983 statute of limitations are Leese's claims relating to his subsequent legal proceedings and incarceration, which appear to be against Pahlke, Rank, the Winner Defendants, Municipal Defendants, and John Doe Defendants. See generally id.

**i. Claims Against Pahlke**

Leese brings claims against Pahlke, a prosecutor for Todd County in his individual and official capacities for monetary relief. Doc. 1 at 3, 13. Beginning with the official capacity claims against Pahlke, "[a] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Therefore, Leese's claims against Pahlke in his official capacity as a prosecutor for Todd County are, in effect, against Todd County, the governmental entity employing Pahlke. Doc. 1 at 3.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Instead, a county "can only be held liable for the unconstitutional acts of its employees under § 1983 'when those acts implement or execute an unconstitutional policy or custom of the [political] subdivision.'" Marquez v. Peterson, No. 5:24-CV-05041-KES, 2025 WL 815208, at *4 (D.S.D. Mar. 13, 2025)

(quoting Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999)); see also Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987) (finding that the governmental "entity's official policy or custom must have caused the constitutional violation" in order for that entity to be liable under § 1983 (citation modified)).

To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018) (quoting Corwin v. City of Indep., 829 F.3d 695, 700 (8th Cir. 2016)). "To trigger municipal liability based on unofficial municipal custom, the custom must be so pervasive among non-policymaking employees of the municipality that it effectively has the force of law." Bolderson v. City of Wentzville, 840 F.3d 982, 986 (8th Cir. 2016) (citation omitted). A § 1983 complaint, however, does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) (citing Doe ex rel. Doe v. Sch. Dist., 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must still include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. Id.; see also Doe, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Here, Leese does not allege the existence of an unconstitutional policy or custom. He alleges that Pahlke violated his rights when he "refused to acknowledge that [Leese] was illegally arrested" and used "racially discriminatory language on the record in Court Proceedings[.]" Doc.

1 at 3. While "[t]he Eighth Circuit has not directly addressed the quantum of 'continuing, widespread, persistent' conduct a plaintiff must allege to satisfy the Iqbal standard in this context, . . . it has held that isolated incidents do not suffice[.]" Ball-Bey v. Chandler, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019) (citations omitted). Although Leese alleges that Pahlke violated his rights, these violations all appear to stem from Leese's conduct regarding a single situation—the court proceedings resulting from Leese's July 2022 arrest. See generally Doc. 1. But this is not enough to suggest the existence of "a continuing, widespread, persistent pattern of unconstitutional misconduct[,]" Brewington, 902 F.3d at 801 (citation omitted). See Quinn v. Doherty, 637 F. Supp. 3d 647, 667 (D. Minn. 2022) ("But Plaintiffs' specific allegations relate only to Plaintiffs' experience. This isolated event does not establish a custom."). Therefore, Leese's claims against Pahlke in his official capacity for damages are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Generally, prosecutors enjoy absolute immunity from damages liability for their work on legal cases. Jorgensen v. Union Cnty., No. 4:22-CV-04124-KES, 2023 WL 4868325, at *4 (D.S.D. July 31, 2023) (citing Burns v. Reed, 500 U.S. 478, 486 (1991)). "[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." Imbler v. Pachtman, 424 U.S. 409, 419 n.13 (1976). Prosecutors enjoy absolute immunity while performing their prosecutorial duties "insofar as that conduct is 'intimately associated with the judicial phase of the criminal process[.]'" Burns, 500 U.S. at 486 (quoting Imbler, 424 U.S. at 430); see also Anderson v. Larson, 327 F.3d 762, 768 (8th Cir. 2003) (holding that absolute immunity shields prosecutors from liability for "prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process" (citations omitted)). Here, Leese's allegations

make clear that Pahlke was acting within the scope of his prosecutorial functions. See Doc. 1 at 3 (alleging that Pahlke violated Leese's rights "under the color of law acting as a prosecutor" and referencing Pahlke's conduct during court proceedings). Therefore, Leese's claims against Pahlke in his individual capacity for damages are dismissed without prejudice on the basis of prosecutorial immunity under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**ii. Claims Against Judge Rank**

Leese also brings claims against Judge Bobbi Rank, a circuit court judge for the Sixth Judicial Circuit of South Dakota. See Doc. 1 at 3. A judge is generally entitled to absolute immunity from suit for acts undertaken in a judicial capacity. Penn v. United States, 335 F.3d 786, 789 (8th Cir. 2003). Judicial immunity, including immunity from suits brought under § 1983 to recover for alleged deprivation of civil rights, applies "in all but two narrow sets of circumstances." Schottel v. Young, 687 F.3d 370, 373 (8th Cir. 2012). "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11–12 (1991) (internal citations omitted). Judicial acts are those normally performed by a judge and if the complainant is dealing with the judge in her judicial capacity. Birch v. Mazander, 678 F.2d 754, 756 (8th Cir. 1982). Based on the allegations in Leese's complaint, Judge Rank's actions were judicial in nature, and Leese does not allege facts suggesting that Judge Rank was acting in the complete absence of jurisdiction. See generally Doc. 1. Therefore, Leese's individual capacity claims for damages against Judge Rank are dismissed without prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Judicial immunity, however, extends only to individual capacity claims. VanHorn v. Oelschlager, 502 F.3d 775, 777–79 (8th Cir. 2007). Because Leese sues Judge Rank in both her individual and official capacities, Doc. 1 at 3, this Court must determine whether Leese's official capacity claims survive. "[C]laims against state officials in their official capacities are really suits against the state[,] and a state is not a person for purposes of a claim for money damages under § 1983." Kruger v. Nebraska, 820 F.3d 295, 301 (8th Cir. 2016) (citation omitted). "[E]ven though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." Edelman v. Jordan, 415 U.S. 651, 663 (1974). Eleventh Amendment immunity applies to suits against the judiciary of a state. See Denke v. S.D. Dep't of Soc. Servs., 829 F.2d 688, 689 (8th Cir. 1987) (recognizing the Eleventh Amendment bars suits "against the state or one of its agencies"). South Dakota circuit courts are part of South Dakota's government and immune from suit under the Eleventh Amendment since they are authorized by the South Dakota Constitution and created by the state legislature. S.D. Const. art. II ("The powers of the government of the state are divided into three distinct departments, the legislative, executive and judicial; and the powers and duties of each are prescribed by this Constitution."); S.D. Const. art. V, § 1 ("The judicial power of the state is vested in a unified judicial system consisting of a Supreme Court, circuit courts of general jurisdiction and courts of limited original jurisdiction as established by the Legislature."); SDCL § 16-5-1.2 (establishing the seven judicial circuits). Accordingly, Judge Rank, as a circuit court judge acting in her official capacity, has Eleventh Amendment immunity. Therefore, Leese's claims against Judge Rank in her official capacity for monetary damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**iii. Claims Against Winner Defendants and Municipal Defendants**

Leese names as a defendant "City of Winner/Winner City Jail[.]" Doc. 1 at 3. To the extent that Leese intended to name the Winner City Jail as a defendant, his claims against the City Jail fail because a "jail is not an entity that is amenable to suit" under § 1983. De La Garza v. Kandiyohi Cnty. Jail, Corr. Inst., 18 F. App'x 436, 437 (8th Cir. 2001) (per curiam) (quotation omitted). Therefore, any claims Leese intended to bring against the Winner City Jail are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Leese also brings claims against the City of Winner and the "Municipalities of Winner/Todd, Tripp Counties[.]" Doc. 1 at 3–4. A municipal or local government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Monell, 436 U.S. at 694. See also Johnson, 172 F.3d at 535 (recognizing that because "[a] political subdivision may not generally be held vicariously liable under [§]1983 for the unconstitutional acts of its employees[,]" a political subdivision can only be held liable for the unconstitutional acts of its employees under § 1983 "when those acts implement or execute an unconstitutional policy or custom of the subdivision."). As discussed above, although Leese need not "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss[,]" Crumpley-Patterson, 388 F.3d at 591, his complaint must, at a minimum, allege facts that "would support the existence of an unconstitutional policy or custom[,]" Doe, 340 F.3d at 614.

"Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." Bolderson, 840 F.3d at 985 (citing Atkinson

v. City of Mountain View, 709 F.3d 1201, 1214 (8th Cir. 2013)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011). To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" Brewington, 902 F.3d at 801 (quoting Corwin, 829 F.3d at 700). "In § 1983 cases based upon municipal custom deliberate indifference is ordinarily shown by a pattern of constitutional violations." Molina v. City of St. Louis, 766 F. Supp. 3d 857, 870 (E.D. Mo. 2025) (citing Perkins v. Hasting, 915 F.3d 512, 521 (8th Cir. 2019)). Lastly, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick, 563 U.S. at 61. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (citation omitted). Because "deliberate indifference is a stringent standard of fault," a plaintiff must show that "a municipal actor disregarded a known or obvious consequence of his action." Id. at 61 (citation modified).

Leese alleges the existence of a "practice among South Dakota officers of instituting false charges against individuals who the officers have subjected to unlawful force with the intention of precluding such individuals from instituting civil claims." Doc. 1 at 12. While "[t]he Eighth Circuit has not directly addressed the quantum of 'continuing, widespread, persistent' conduct a

plaintiff must allege to satisfy the Iqbal standard in this context, . . . it has held that isolated incidents do not suffice[.]" Ball-Bey, 415 F. Supp. 3d at 895 (citations omitted). See also Quinn, 637 F. Supp. 3d at 667 ("But Plaintiffs' specific allegations relate only to Plaintiffs' experience. This isolated event does not establish a custom."); Yang v. City of Minneapolis, 607 F. Supp. 3d 880, 898 (D. Minn. 2022) ("Alleging a single instance of misconduct is not sufficient to support an inference of a custom or unofficial policy of the City." (citation omitted)). Leese's "vague and conclusory allegations that his injuries were caused by some unidentified unconstitutional policies, customs or practices is not sufficient to state a Monell claim." Triemert v. Washington Cnty., No. 13-CV-1312 (PJS/JSM), 2013 WL 6729260, at *12 (D. Minn. Dec. 19, 2013) (citation omitted), aff'd, 571 F. App'x 509 (8th Cir. 2014) (per curiam).

Leese's complaint contains other general references to policies, customs, and a deliberately indifferent failure to train. In Count 10 of his complaint, Leese alleges that "the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendants, which has encouraged, tolerated, ratified and has been deliberately indifferent to the following practices, policies, patterns, and customs, and to the need for more or different training, supervision, investigation, or discipline[.]" Doc. 1 at 11–12. But these general references to a policy or custom are conclusory and fail to sufficiently allege the existence of a policy or custom. A plaintiff fails to plead an actionable Monell claim when the complaint only contains "boilerplate allegations asserting the mere generic elements of a Monell claim without any factual allegations specific to [the] case." D.B. v. Hargett, No. 13–2781 (MJD/LIB), 2014 WL 1371200, at *6 (D. Minn. Apr. 8, 2014). See also Triemert, 2013 WL 6729260, at *12 (providing that a Monell claim fails when "the Complaint does not provide any description of any policy, custom or practice at all[]"). To the extent that Leese intended to allege a claim based on

a failure to train or supervise, his conclusory statement is not enough to show that the defendants demonstrated a deliberately indifferent failure to train. See Connick, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). Therefore, Leese's claims against the City of Winner and Municipal Defendants are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**iv. Claims Against John Doe Defendants**

Leese brings claims against "John Doe's [sic] of unknown parties involved employed at unknown agencies at unknown institutions until discovery and later times once suit moves forward." Doc. 1 at 4. Leese alleges that the John Doe Defendants "violated [his] Rights under color of law by unknown means as well as unknown applications until discovery is granted." Id. Although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). A court is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. Id. Because Leese alleges no facts to indicate what these defendants did to violate his rights, his claims against them are dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). See Mencin v. City of Troy Police, No. 4:24-CV-852 PLC, 2024 WL 4370846, at *3 (E.D. Mo. Oct. 2, 2024) (finding that a complaint failed to state a claim upon which relief could be granted when it did not "allege, with any specificity, what [defendants] did to violate [plaintiff's] rights."); see also Murthy v. Missouri, 603 U.S. 43, 67 n.7 (2024) ("[j]udges are not like pigs, hunting for truffles buried [in the record]") (alterations in original) (quoting Gross v. Cicero, 619 F.3d 697, 702 (7th Cir. 2010)).

**d. Fourth Amendment Malicious Prosecution Claim**

Leese alleges that the statute of limitations for his malicious prosecution claim began to run on December 9, 2022, because the "statute of limitations for a malicious prosecution claim does not begin to run until the criminal proceedings against the defendant . . . have terminated in his favor."[16] Doc. 1 at 1 (citations omitted). Leese alleges that the "criminal proceedings against [him] regarding this complaint terminated on December 9th, 2022 and this petition is deemed filed via prisoner mailbox rule on 11-19-25[.]" Id. But even if this Court were to assume that the statute of limitations has not run on Leese's malicious prosecution claim, he fails to state a cognizable malicious prosecution claim.

Liberally construing his complaint, Leese alleges a Fourth Amendment malicious prosecution claim against all defendants.[17] See generally id. at 1–12. "[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause." Thompson v. Clark, 596 U.S. 36, 43 (2022). Therefore, to state a claim of malicious prosecution under the Fourth Amendment, "[a] plaintiff must show that (1) the criminal proceeding was instituted without probable cause, (2) the defendant's motive in instituting the proceeding was malicious, and (3) the prosecution terminated in acquittal or discharge of the accused." Klein v. Steinkamp, 44 F.4th 1111, 1115 (8th Cir. 2022) (citing Thompson, 596 U.S. at

---

[16] "Although courts look to state law for the length of the limitations period, the time at which a § 1983 claim accrues is a question of federal law, conforming in general to common-law tort principles. . . . That time is presumptively when the plaintiff has a complete and present cause of action[.]" McDonough v. Smith, 588 U.S. 109, 115 (2019) (citation modified). As discussed below, a plaintiff alleging a Fourth Amendment malicious prosecution claim must show that the prosecution terminated in acquittal or discharge of the accused. Klein v. Steinkamp, 44 F.4th 1111, 1115 (8th Cir. 2022) (citation omitted).

[17] Leese also appears to bring a state-law malicious prosecution claim. See Doc. 1 at 9. This claim will be addressed below along with Leese's other state-law claims.

44). "The Eighth Circuit has stated that a plaintiff must 'show malice—that is, an improper purpose for bringing the action or using the process . . . [and] that the defendant instituted proceedings without reasonable grounds for doing so.'" Artisani v. Dubuque Cnty., No. 25-CV-1029-CJW-MAR, 2026 WL 252744, at *11 (N.D. Iowa, Jan. 30, 2026) (alterations in original) (quoting Brown v. Am. Fed'n of State, Cnty. & Mun. Emps., Council No. 5, AFL-CIO, 41 F.4th 963, 968 (8th Cir. 2022)), aff'd, No. 26-1358, 2026 WL 2532255, at *1 (8th Cir. Aug. 4, 2026).

Here, even with a liberal construction of his complaint, Leese does not plead sufficient facts to plausibly allege that defendants acted without probable cause. See generally Docs. 1, 1-1. Leese attaches to his complaint an affidavit by Sheriff Blum, where Blum states that he arrested Leese pursuant to a warrant. See Doc. 1-1 at 51–52; see also id. at 55–56. "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]" Messerschmidt v. Millender, 565 U.S. 535, 546 (2012). Further, Leese provides nothing other than conclusory statements to show that his criminal proceeding was initiated without probable cause. See generally Docs. 1, 1-1. But "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do[,]" and a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (citation modified). See also Wright v. Mahowald, No. 25-CV-2502 (JRT/DLM), 2026 WL 2573244, at *5 (D. Minn. July 29, 2026) (finding that a malicious prosecution claim fails to survive under Rule 12(b)(6) because, even "[v]iewing the facts as alleged in the light most favorable to [plaintiff], it is not plausible that no reasonable ground of suspicion existed to arrest [him]."), report and recommendation adopted by 2026 WL 2572214 (D. Minn. Aug. 31, 2026).

Additionally, Leese does not provide facts that the defendants' motive in instituting the proceedings was malicious. See generally Docs. 1, 1-1. See also Gunn v. Stearns, No. 4:25-CV-04034-ECS, 2025 WL 2416132, at *9 (D.S.D. Aug. 21, 2025) (dismissing malicious prosecution claim on screening when plaintiff "alleges no facts showing that [defendant] initiated the proceedings based on a malicious motive."). Here, Leese only provides conclusory allegations of malicious prosecution, such as his statement that he was "Held 90 days for Zero Reason other than malicious intent." Doc. 1 at 21. But other than conclusory statements, Leese "has pleaded no facts that [defendants] harbored any sort of personal animosity or hatred towards him that caused the prosecution." Artisani, 2026 WL 252744, at *11 (finding that "[b]ecause plaintiff has failed to allege facts showing an essential element of malicious prosecution—the malice itself—he has failed to allege a cognizable claim of malicious prosecution."); see also Docs. 1, 1-1. Therefore, Leese's Fourth Amendment malicious prosecution claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[18]

### 2. Bad Men Clause of the Fort Laramie Treaty of 1868

Leese alleges claims under the "Bad Men" doctrine, see, e.g., Doc. 1 at 7, which the Court understands to be a claim under the Fort Laramie Treaty of 1868. The applicable portions of the Fort Laramie Treaty of 1868 provide as follows:

> If bad men among the whites, or among other people subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians, the United States will, upon proof made to the agent and forwarded to the Commissioner of Indian Affairs at Washington City, proceed at once to cause the offender to be arrested and punished according to the laws of the United States, and also re-imburse the injured person for the loss sustained.

[18] Leese also alleges that the MDOC maliciously prosecuted him. Doc. 1-1 at 26, ¶ 32; see also id. at 27, ¶ 38. But the MDOC, nor any of its employees, are named as defendants. Doc. 1 at 1–4.

> If bad men among the Indians shall commit a wrong or depredation upon the person or property of any one, white, black, or Indian, subject to the authority of the United States, and at peace therewith, the Indians herein named solemnly agree that they will, upon proof made to their agent and notice by him, deliver up the wrong-doer to the United States, to be tried and punished according to its laws; and in case they wilfully refuse so to do, the person injured shall be re-imbursed for his loss from the annuities or other moneys due or to become due to them under this or other treaties made with the United States.

1868 Treaty of Fort Laramie art. I, Feb. 16, 1898, 15 Stat. 635.

Leese brings a claim under the Bad Men Clause because he alleges that he should have been able to seek refuge from bad men (presumably, the MDOC and Sheriff Blum) on the Rosebud Reservation, which he understands to be akin to a foreign embassy. See Doc. 1-1 at 8 (stating that he left Michigan "on the run seeking sanctuary at [his] countried 'embassy' which is what tribal lands are suppose to be for tribal members fearful of the 'bad men' outlined in treaty's" (spelling and grammar errors in original)). But Leese's interpretation of the Bad Men Clause is misguided. Instead,

> The 1868 Treaty is sufficiently clear to establish that the government has a treaty-based duty to arrest and prosecute crimes by non-tribal members on the Tribe's lands against the person or property of tribal members under the First Bad Men Clause, to cooperate with the Tribe to try and punish those delivered up by the Tribe under the Second Bad Men Clause, and to at the very least "keep an office open at all times" on the Reservation for prompt and diligent inquiry into criminal matters on the Reservation under Article 5.

Oglala Sioux Tribe, 674 F. Supp. 3d at 663.

Further, "[t]he bad-men provision allows individual Indians[19] to file suit against the United States for reimbursement—not against the 'bad men' themselves." Conroy v. Meeks, No. 5:23-

[19] While "American Indian," "Native American," or "tribal member" probably are more apt terms in today's parlance, federal law commonly and historically refers to those descended from or affiliated with the 575 federally recognized American Indian tribes as "Indians." See Tribal Leaders Directory, U.S. Dep't of the Interior Indian Affs., https://www.bia.gov/service/tribal-

CV-05056-KES, 2023 WL 8238149, at *3 (D.S.D. Nov. 28, 2023) (citations omitted). Here, Leese sues various county, state, and tribal officials, but not the United States. Doc. 1 at 1–4. Therefore, his claims under the Bad Men Clause of the 1868 Treaty of Fort Laramie are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted. See Conroy, 2023 WL 8238149, at *3 (dismissing claims under the Bad Men Clause against defendants employed by a county jail).

### 3. State-Law Claims

Construing his complaint liberally, Leese also brings a state-law malicious prosecution claim, as well as state-law claims for assault, battery, false arrest, and false imprisonment. Doc. 1 at 9. Under 28 U.S.C. § 1367(a), this Court "shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). This Court may, however, decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Because all claims over which a federal court might have original jurisdiction have been dismissed, this Court declines to exercise supplemental jurisdiction under 28 U.S.C.§ 1367(c)(3).

## II. Motion to Appoint Counsel

In his complaint, Leese requests that the Court "grant [him] a lawyer to assist with this filing that will shed light upon many many rights violations that occurred throughout this entire mess[,]" which this Court liberally construes as a motion to appoint counsel. Doc. 1 at 12. Because Leese's claims are all dismissed, his motion to appoint counsel, Doc. 1 at 12, is denied as moot.

---

leaders-directory (last visited Oct. 22, 2026) (recognizing that, as of January 30, 2026, there are 575 federally recognized tribes).

## III. Conclusion

For the reasons explained herein, it is

ORDERED that Leese's requests for injunctive relief are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Leese's claims against Blum, Willcuts, and Old Lodge which relate to his July 12, 2022 arrest are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that any other claims pertaining to events occurring before November 19, 2022, are barred by the statute of limitations and are therefore dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Leese's claims against Pahlke in his individual and official capacities for monetary relief are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Leese's individual and official capacity claims against Judge Rank for monetary relief are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that any claims Leese intended to bring against the Winner City Jail are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Leese's claims against the Winner Defendants and Municipal Defendants for monetary relief are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Leese's claims against the John Doe Defendants in both their individual and official capacities for monetary relief are dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Leese's Fourth Amendment malicious prosecution claim is dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Leese's claims under the Bad Men Clause of the 1868 Treaty of Fort Laramie are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted. It is further

ORDERED that Leese's state-law claims are dismissed without prejudice because the Court declines to exercise supplemental jurisdiction. It is further

ORDERED that any other claims Leese intended to allege are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is finally

ORDERED that Leese's motion to appoint counsel, see Doc. 1 at 12, is denied as moot.

DATED November 17th, 2026.

BY THE COURT:

Roberto A. Lange

ROBERTO A. LANGE
CHIEF JUDGE